UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Recardo D. Meeks,                                            Civil No. 10-2008 (DWF/LIB)

          Plaintiff,

v.                                                                     **MEMORANDUM**
                                                                       **OPINION AND ORDER**
The City of Minneapolis; Officer David
O'Connor ( individually and in his official
Capacity), and Officer Daniel Anderson
(individually and in his official capacity),

          Defendants.

_____

Andrew P. Muller, Esq., Muller & Muller, PLLC; John A. Klassen, Esq., John A. Klassen, PA; and Joshua W. Carlson, Esq., Cottrell Law Firm, counsel for Plaintiff.

Darla J. Boggs and James Anthony Moore, Assistant City Attorneys, Minneapolis City Attorney's Office, counsel for Defendant City of Minneapolis.

Ann E. Walther, Esq., and Karin E. Peterson, Esq., Rice Michels & Walther LLP, counsel for Defendant Officers David O'Connor and Daniel Anderson.

_____

**INTRODUCTION**

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment Against Defendant Officers (Doc. No. [19]). For the reasons set forth below, the Court grants Plaintiff's motion.

**BACKGROUND**

Plaintiff's claims arise from a search of his person conducted pursuant to a traffic stop on March 25, 2009.  (*See* Doc. No. 1, Compl.; Doc. No. 22, Muller Aff., ¶ 3, Ex. 1 ("O'Connor Depo.") at 39.)  On that date, Defendant Minneapolis Police Officers David O'Connor and Daniel Anderson (together "Defendant Officers") were working for the Little Earth Housing Complex in an off-duty, uniformed capacity.  (*See* O'Connor Depo. at 25, 39.)  Defendant Officers were patrolling the area in a marked Minneapolis Police squad car, driven by Officer O'Connor.  (*See id.* at 39–40.)  At approximately 2:30 a.m., the officers conducted a traffic stop on a vehicle driven by Plaintiff for a purported speed limit violation.  (*See id.* at 39; Muller Aff., ¶ 9, Ex. 7 ("Anderson Depo.") at 31; Muller Aff. ¶ 4, Ex. 2 ("Video")[1].)  Defendant Officers approached the vehicle, with Officer O'Connor on the driver's side and Officer Anderson on the passenger side.  (O'Connor Depo. at 42; Anderson Depo. at 31–32.)  The officers claim that they could smell marijuana coming from the vehicle.  (O'Connor Depo. at 44; Anderson Depo. at 62.)  Officer O'Connor asked the driver, later identified as Plaintiff, for his identification and insurance information.  (O'Connor Depo. at 42.)  Plaintiff provided a clipped Minnesota ID card.  (*Id.* at 43.)  The officers then returned to their squad to run a driver's license check.  (*Id.* at 45–46.)  When Officer O'Connor returned to Plaintiff's vehicle, he asked Plaintiff to step out of the car in order to search Plaintiff and the vehicle for marijuana.

---

[1]   The traffic stop and subsequent search were recorded by a security camera. (Video.)  The recording contains no audio.  (*Id.*)

(*Id.* at 47.)  Officer O'Connor then conducted a pat-down search of Plaintiff, next to Plaintiff's vehicle, while Plaintiff's hands remained behind his head.  (Video; O'Connor Depo. at 48–49.)  Plaintiff remained fully clothed while Officer O'Connor thoroughly patted down Plaintiff's outer clothing and buttock area[2] and emptied Plaintiff's pockets.  (Video.)  While pat searching Plaintiff's buttocks, Officer O'Connor claims to have "felt a large bulge between [Plaintiff's] buttocks cheeks."  (O'Connor Depo. at 48–49.)  The bulge was "blunt" and without a "specific shape." (*Id.* at 50.)  Officer O'Connor testified that, upon feeling the "bulge," he "started becoming concerned" and proceeded to handcuff Plaintiff "for [his] safety."  (*Id.* at 51.)

Officer O'Connor then escorted Plaintiff, in handcuffs, to the police car.  (Video.) Officer Anderson waited with Plaintiff outside the squad briefly while Officer O'Connor returned to the car driven by Plaintiff.  (*Id.*)  Upon his return to the squad car, Officer O'Connor pushed Plaintiff down onto the trunk of the vehicle, then pulled down Plaintiff's pants, exposing Plaintiff's buttocks.  (*Id.*)  While Plaintiff leaned forward on the trunk of the police car, held in place by Officer Anderson, Officer O'Connor inspected Plaintiff's buttock area with a flashlight.  (*Id.*)  Plaintiff's body was further illuminated by the squad car's flashing lights.  (*Id.*)

The video reveals that a piece of tissue paper protruded from Plaintiff's anus.  (*Id.*) Plaintiff's pants remained around his knees, with his buttocks fully exposed, while

---

[2]  At his deposition, Officer O'Connor testified that "we always check the buttocks region to make sure there's not a weapon or narcotics there."  (O'Connor Depo. at 49.)

3

Officer O'Connor opened the trunk of the squad to retrieve rubber gloves. (*Id.*; *see* O'Connor Depo. at 68–69.) Officer O'Connor then removed the tissue from Plaintiff's anus while Officer Anderson looked on.[3] (Video; O'Connor Depo. at 69.) Officer O'Connor claims to have believed that "there was a distinct possibility" that Plaintiff was concealing a gun between the cheeks of his buttocks. (O'Connor Depo. at 67–72.) Ultimately, several "nuggets" of marijuana were retrieved by Defendant Officers pursuant to the search. (*Id.* at 67–70.)

In this action, Plaintiff asserts claims under 42 U.S.C. § 1983 for violations of his Fourth Amendment rights against Defendant Officers and a battery claim against Defendant Officers and the City of Minneapolis.[4] Plaintiff has moved for partial summary judgment on his Fourth Amendment claim against Defendant Officers.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank*

---

[3] Because of Officer O'Connor's position behind Plaintiff at the time of the strip search, the extent to which Officer O'Connor may have conducted a body cavity search is unclear from the video. (Video.)

[4] Pursuant to a stipulation of the parties, the Court dismissed Counts 2 and 3 of Plaintiff's complaint, as well as Plaintiff's Fourteenth Amendment claims in Count 1.
(Footnote Continued on Next Page)

*of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Enter. Bank*, 92 F.3d at 747.  The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial.  *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).  A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.     Plaintiff's Claims Against Defendant Officers

Plaintiff has moved for partial summary judgment as to liability against Defendant Officers with respect to his claim that Defendant Officers violated Plaintiff's right to be free from unreasonable searches under the Fourth Amendment.  Viewing the facts in the light most favorable to Defendant Officers, the Court finds, as a matter of law, that the officers violated Plaintiff's rights under the Fourth Amendment.

---

(Footnote Continued From Previous Page)
(Doc. No. 35.)

The Fourth Amendment to the United States Constitution prohibits unreasonable searches. *Bell v. Wolfish*, 441 U.S. 520, 558 (1979). The test of reasonableness "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.* at 559. The Court concludes that the strip search of Plaintiff in this case was objectively unreasonable.

Defendant Officers assert that, because they believed that Plaintiff was concealing a gun, exigent circumstances existed to strip search Plaintiff on a public street. Plaintiff, however, relies on *Starks v. City of Minneapolis*, 6 F. Supp. 2d 1084, 1089 (D. Minn. 1998), for the proposition that police officers are not entitled to conduct a strip search simply because they have probable cause to believe a suspect may be hiding something.

In that case, Starks claimed that officers violated her constitutional rights by ordering her to lower her pants and underwear in a public place when the officers suspected that she possessed marijuana. *Id.* at 1086–87. The district court concluded that, at the time the officers conducted the strip search, "the officers knew conclusively that [the] plaintiff did not have a firearm or a weapon because she had already been searched and patted down twice—once before being placed into the squad car, and again by Officer Ireland prior to the claimed strip search." *Id.* at 1089. The court further emphasized that the officers had detected the odor of burnt marijuana and noted that whatever the officers suspected her of hiding "was small enough in amount that it had not

been perceived by feel" pursuant to the pat-down searches. *Id.* In light of these facts, the court concluded that the plaintiff's claims survived summary judgment.

The Court finds *Starks* to be persuasive here. Even assuming Defendant Officers actually believed Plaintiff was in possession of a weapon at the time of the stop, after conducting the pat-down search, no reasonable officer could have maintained the belief that Plaintiff concealed a gun on his person. (*See* Video.) The video makes clear that, prior to the strip search, Officer O'Connor conducted a very thorough, and rather aggressive, pat-down search of Plaintiff's outer clothing, which included, and appeared to focus on, Plaintiff's buttock area. (Video.) Officer O'Connor claims that he felt "a hard bulge" in the area of Plaintiff's buttocks during the pat-down search. The Court finds that whatever Officer O'Connor suspected Plaintiff of concealing was small enough that no reasonable officer would have perceived it to be a weapon pursuant to the pat-down search, as evidenced by the video. Still, after conducting the pat-down, Officer O'Connor handcuffed Plaintiff. (*Id.*) Rather than conduct a less intrusive "reach-in" search at that point to determine what, if anything, Plaintiff concealed in his undergarments, Defendant Officers, instead, opted to pull down Plaintiff's pants and fully expose Plaintiff's buttocks on a public street.[5] (*Id.*)

---

[5] In light of Defendant Officers' failure to avail themselves of the less invasive alternative of a reach-in search, the Court need not reach Plaintiff's argument that Defendant Officers should have transported Plaintiff to the nearby police station to conduct the search. *See Starks*, 6 F. Supp. 2d at 1089 (determining that "the very short drive time to the Downtown police station obviates any claim of exigent circumstances" requiring a strip search in that case).

A public strip search of a suspect is more invasive than a "reach-in" search performed when an officer reaches into a suspect's pants without disrobing him to retrieve a hidden item from the area surrounding the suspect's buttocks or genitals. *See United States v. Williams*, 477 F.3d 974, 976, 977 (8th Cir. 2007). Although "the availability of a less intrusive alternative does not necessarily prove unreasonableness," case law suggests that police officers "should take precautions to insure that a detainee's privacy is protected from exposure to others unconnected to the search." *Id.* at 977. Unlike a strip search, "during which a suspect must expose fully his or her private areas," a reach-in search of a clothed suspect "may be permissible if police take steps commensurate with the circumstances to diminish the potential invasion of the suspect's privacy." *Id.* Here, Defendant Officers disrobed Plaintiff unnecessarily where a less intrusive "reach-in" search could have accomplished their stated objective of attempting to retrieve a hidden weapon.[6] Defendant Officers failed to avail themselves of any less intrusive alternatives to strip searching Plaintiff on a public road.

---

[6] Given the Court's conclusion that, after conducting the pat-down search, no reasonable officer could have maintained the belief that Plaintiff concealed a gun on his person, the Court need not reach the issue of whether a strip search would be constitutionally permissible on the following facts: where reasonable officers actually believe that a suspect is concealing a weapon in his undergarments, but fail to avail themselves of the less intrusive alternative of a reach-in search. The Court notes, however, that even if a reasonable officer would have believed that Plaintiff was in possession of a gun at the time of the strip search here, a less intrusive reach-in search would have been a constitutionally permissible alternative to the strip search conducted and would have allowed the officer to determine whether Plaintiff concealed a weapon in the area surrounding his buttocks.

Moreover, the video makes clear that Defendant Officers made no effort to protect Plaintiff's privacy. *Contra id.* (concluding that the officers conducting a reach-in search of a clothed suspect in a private, fenced precinct parking lot "took adequate precautions to protect [the suspect's] privacy, and the search in the parking lot caused no unreasonable 'invasion of personal rights' in violation of the Fourth Amendment"). Defendant Officers conducted the search on a public street while Plaintiff was handcuffed. (Video.) Rather than allowing Plaintiff to remain fully clothed, as would have been the case with a "reach-in" search, Officer O'Connor dropped Plaintiff's pants to his knees, fully exposing Plaintiff's buttocks. Plaintiff's pants remained around his knees, with his buttocks exposed, for approximately three minutes while the officers prepared for, and then conducted, their search.[7] (*Id.*) The officers made no effort of any kind to shield Defendant's body from public view, and his buttocks remained fully visible throughout the duration of the search.

On the facts of the instant case, there is nothing before the Court to suggest any conceivable exigency that could only be met by strip searching Plaintiff in public, on the spot. *See Campbell v. Miller*, 499 F.3d 711, 719 (7th Cir. 2007) (finding a public strip search constitutionally invalid, as a matter of law, because "there was nothing before the jury that suggested any conceivable exigency that could only be met by strip-searching

---

[7] The Court need not reach the issue of whether a body cavity search occurred in addition to the strip search, given the Court's conclusion that the strip search in and of itself was unreasonable and constitutionally impermissible.

[the plaintiff] in public, on the spot"). Although the video contains no recorded audio, Plaintiff appears to have been compliant at all times. (Video.) The officers moved slowly and with no apparent sense of urgency or fear. (*See id.*) Nothing about their conduct indicates that the situation presented any imminent threat to their safety. (*See id.*) In fact, Officer Anderson can be seen smiling on the video. (*See id.*) Plaintiff was handcuffed immediately after the pat-down and remained handcuffed throughout the duration of the strip search. (*See id.*) In light of the objective facts as captured on video, the Court concludes that no exigency existed so as to reasonably warrant a strip search of Plaintiff.

The Court finds that Defendant Officers committed a *per se* constitutional violation by conducting an intrusive public search in light of the facts in this case. *See Campbell*, 499 F.3d at 719 ("Courts across the country are uniform in their condemnation of intrusive searches performed in public."). Defendant Officers have not met their burden of demonstrating that exigent circumstances required conducting a strip search of Plaintiff on a public thoroughfare. *See Coolidge v. New Hampshire*, 403 U.S. 443, 455 (1971) (explaining that there must be "a showing by those who seek exemption [from the Fourth Amendment's warrant requirement] . . . that the exigencies of the situation made that course imperative."). The video makes clear that no compelling exigent circumstances existed to justify the invasive search on a public street. *See Scott v. Harris*, 550 U.S. 372, 380–81 (2007) (concluding that the lower court "should have viewed the facts in the light depicted by the videotape"). Not only was the strip search

unsupported by exigent circumstances, but Defendant Officers did not attempt to protect Plaintiff's privacy in any way, whether by shielding his body or by relying on the less intrusive alternative of a "reach-in" search.

The Court holds that a reasonable police officer would not be justified in assuming that an on-street strip search in this case was within the boundaries defined by the Fourth Amendment to the United States Constitution. The Court thus finds that the strip search conducted by Defendant Officers was unconstitutional as a matter of law.[8]

Because the Court concludes that Defendant Officers unlawfully subjected Plaintiff to an unreasonable search in violation of the rights afforded him under the Fourth Amendment to the United States Constitution, he is entitled to partial summary judgment with respect to his Fourth Amendment claim.

## ORDER

Accordingly, based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Partial Summary Judgment Against Defendant Officers (Doc. No. [19]) is **GRANTED** with respect to Count I, paragraph 29(i), of the Complaint.

2. Plaintiff is entitled to judgment as to his claim that Defendant Officers

---

[8] The Court rules narrowly on the record before it. Because the Court concludes that Defendant Officers committed a constitutional violation based on the facts, the Court need not reach Plaintiff's argument that the CRA report proves that the officers' conduct was unreasonable.

violated his Fourth Amendment right to be free from unreasonable searches.

(Compl. ¶ 29(i).)


Dated: October 12, 2011                             s/Donovan W. Frank
                                                    DONOVAN W. FRANK
                                                    United States District Judge